

"United States District Court"
Western District of Wisconsin

Dennis E. Jones 'EL , and
Micha`el Johnson, And all
similarly situated,
           **Plaintiff**

V.

Gerald Berge, James Parisi, Linda Tripp
Vicki Sharpe, Randy Hepp, Ted Harig,
Laura Harding, David Hautamaki,
Bruce Muraski, and Gary R. McCaughtry,

           **Defendants**



Case No. # ▓▓▓▓▓

"Complaint under The Civil
Rights Act 42 USC 1983"

00C 0421 C

### "Nature of the Cause"

This is a civil rights action alleging violation of Plaintiffs' rights under the 1st, 4th, 8th, and 14th amendments of the United States Constitution, and 42 U.S.C § 1983. Plaintiffs seek injunctive, declaratory, and monetary relief.

### "Jurisdiction"

The court has jurisdiction pursuant 28 U.S.C §1331

### "Exhaustion"

Plaintiff s have exhausted all administrative remedies available through the Department of Corrections (D.O.C), Inmate Complaint Review System (ICRS) process by filing complaints from 1st step top the last, and having them denied on each claim. As to the disciplinary action mentioned at para. **36**, its finding of guilt has been reversed by a court of law.

### "Parties"

Plaintiffs: <u>Dennis E. Jones "El</u>. (hereinafter 1st Plaintiff) and <u>Micha`el Johnson</u> (hereinafter 2nd Plaintiff) are both natural born citizens of the United States, currently incarcerated to the Supermax Correctional Institution (S.M.C.I), P.O. Box 9900, Boscobel, WI. 53805, and were at all times relevant to this action; with the exception of claims involing last 4 defendants at which 1st plaintiff was confined to Waupun Correctional Institution (W.C.I), P.O. 351, Waupun, WI. 53963.

Defendants: Gerald Berge is employed as ▓▓▓▓▓ as Warden of S.M.C.I; James Parisi is employed as Security Director at S.M.C.I; Linda Tripp is employed as a Unit Manager at S.M.C.I; Vicki Sharpe is employed as Unit Manager at S.M.C.I; Randy Hepp at all times relevant, was employed as Program Director at S.M.C.I; Ted Harig is employed as Educational at S.M.C.I; all of these defendants being located at S.M.C.I, 1101 Morrison Dr., P.O. Box 9900 Boscobel, WI. 53805; and Laura Harding is employed as a Social Worker at W.C.I; David Hautamaki is employed as a hearing committee member at W.C.I; Gary R. McCaughtry is employed as Warden of W.C.I; and Bruce Muraski is employed as a Security Captain at W.C.I; and all of these defendants employed at are located at 200 S. Drummond, P.O. Box 351, Waupun, WI. 53963. All of the above defendants acted under color of state law and are being sued in their individually and official capacity.

### "Facts"

1. Plaintiffs (Ptffs.) are confine to S.MC.I in which they are confine to their cell 24 hours a day.

2. Ptffs. cells have: showers inside the cell; are made of 4 concrete prefabricated walls and one box car door; no windows to see outside; and flourescent light that is kept on 24 hr. (day and night) forcing ptffs. to live in monotonous illuminations, with no view of the outside world; and ventilation which only reflects outside temperature, cold outside cold in cells and hot outside is hot in cells, which is inadequate.

3. Ptffs. have complained in writing through the ICRS process, medical staff, and otherwise about the monotonous illumination and how it was (and is) causing excruciating eye and head aches, little sleep, and sometimes no sleep. 1st ptff. sought a medical needs slip so that the light could be turned off at night, but was told that there was nothing they could do, per security. 2nd ptff. was prescribed some eye coverings with elastic but told that it had to be okayed by security, therefore, it was not allowed, but rather two small cotton gauzes with no way of

stationing them on his eyes. Both plaintiffs have taken medication for their eye and headaches, but it's only ibuprophen and usually does little when the aches are severe.

4. In addition to the above, supra 1-3 defendants have directed their staff to constantly awaken us at all times of the night to make us move. These rounds are done at least once an hour and sometimes twice an hour, no items are allowed to be placed over the head area and we are directed to sleep at the end of the bed that's directly beneath the light. Defendants have flash lights and, as in any Wisconsin Maximum Security Institutions (where flashlights are used to see in cells at night) when the institution is locked down at night inmates are in basically the same positions—confined to a dark cell. Inmates at S.M.C.I can be counted at night with flashlights as opposed to monotonous illumination. Defendants Parisi is in charge of security and has enforced the 24 hour illumination, and Defendants Berge, Sharpe, Tripp, and Hepp have been made aware of these complaints of it on their units, and as a body have condoned it.

5. Being constantly awoken, living in 24 hour ilumination, receiving little sleep and no sleep, in a cell with no view for 24 hours a day, ~~everybody~~, are painful physically and mentally. As a result of this ptffs. have often found it hard to focus and concentrate thoughts. 1st ptff. has also received pyschological treatment.

6. Both ptffs. came to S.M.C.I with files indicating on-cite dental needs and were scheduled ( at previous institutions) to see dentists, yet were not seen by denists at S.M.C.I (who have ~~had~~ not had dentists) for serveral months; and were often sujected to no toothbrush, but rather some finger contraption which is place on the tip of the finger and has small plastic spikes ( rather than bristles). If one pushes forward this contraption comes off your finger when you pull backwards. Inmate Lorenzo Bali accidently swallowed one of these at Columbia Correctional Institution (at which Def. Parisi worked prior to S.M.C.I) and had to be taken to outside hospital so it could be medically extracted.

7. 2nd ptff. suffered bleeding gums, choking, and lacerations while trying to use this contraption, supra 6, and the lack of dental treatment caused him to endure extreme oral pain, which also resulted in him developing a mouth condition known as ~~[redacted]~~ *periecinitis*.

8. 1st ptff. also suffered bleeding gums and constant problems with this same contraption, supra 6-7, and major problems cleaning his teeth, which had two large cavities and one abscess, all very painful at times - which he had to endure with no treatment for several months. The dentist told 1st ptff that the abscess was poisonous and the poison was leaking through-out his body and if untreated could cause death. 1st ptff. abscess tooth was finally pulled and the cavities filled. If treated earlier the abscess tooth possibly could have been saved, or at the least reduced the risk of a serious fate - fatality.

9. Defendants provide no physical recreation for ptff., and absolutely no oppkrotunity to absorb outside sunshine. What defendants call recreation is 4 empty concrete slabs with no exercising aparatus, no pull-up bar, weights, bike, basketball hoop, nothing. There is more amusement in the inmate cell than in this cellar, which is suppose to be recreation, which is why very seldom (if any) of S.M.C.I's population of inmates opts to go into this "cellar rec." on the days allowed; *and in the cells plaintiffs are allowed only 2 underwear exchanges a week (socks, underwear, etc.), only one in cell at a time, no athletic shoes, which is unhygenic/inadequate.*

10. In additional, to supra 9, if ptffs. opt to go to what's suppose to be the legal room to review law books (in which their in ankle, wrist, and waist shackles) it's counted as a physical recreation peroid of which ptffs. are suppose to be allowed 4 x's a week, but in fact would be blessed to get one - for 24 inmates are expected to share only 2 recreation cages.

11. This, supra 9-10, is insufficient physical rereation, and in fact no physical recreation. 1st ptff came to S.M.C.I I recovering from leg surgery due to a basketball injury, and was prescribed physical therapy in which the therapist recommended, access to leg machines, etc. without access to any such machines or any such recreation at all, 1st ptff. has suffered a continuous prolonged recovery. Since at S.M.C.I, 1st ptff. Has seen the orthopedic specialist who operated on him, and again Dr. Lang noted muscle atophy in his left leg and reommended physical recreation and particularly some form of weights, such as water weights. Defs. obstinately provided and provdes no such recreation whatsoever, and it has stagnated what could be a better recovery.

12. Defs. have cameras in ptffs. cells 24 hrs a day, watching when inmates shower, urinate, defacate, wash-up, and in some cases (for those who do ) masturbate. Females staff also view these camera's and have on occasion commented on inmates private parts. This is a 24 hr strip searches, and in fact, psychological observation status which under by D.O.C policy should be medically (clinically prescribed (under extreme circumstances).

13. Also, regarding subra 12, inmates records (other than medical or clinical) are public records; and defs. 24 hr watch on ptffs. invades not only their personal privacy, but makes it public record, capable of becoming televised prison reports in which videos of in compromising positions are often shown.

14. Defs. have and continue to subject ptffs to constant cell searches, and each one includes a full body strip search and anal cavity search. 1st ptff. has been subjected to at least 10 (one time thrice in one month). 2nd has been subjected to at least 22 of these searches (once four in one month). These searches are not done for cause but rather by routine; and all of the above, supra 12-14 causes constant humiliation and dehumanization.

15. Ptffs. have been denied magazinces, newspapers, or similar periodicals; allowed no purchase of stamps; allowed no mail on Saturdays; and have been limited to only 10 stamped envelopes to be used for family, friends and court. No matter if one has 3 or 4 pending cases, which require 2 postage each (court and attorney), which forces ptff. to choose between communicating personally or legally. The WI. D.O.C, I.M.P policy allows the purchase of up to 25 stamps weekly.

16. Defs. only allow ptffs. one or two 6 minute phone calls a month. 1st ptff. has 3 children and does not even have time to speak to his children other than to say hi and bye when he does call.

17. Defs. provide no case law books for ptffs., but rather ptffs. have to give full exact case cites, at which point defs. order the cases from another institution, which sometimes takes a full month for a single case. Defs own D.O.C policy mandates case law books, as does several national standards for an adequate prison law library.

18. The legal room at S.M.C.I has: A WI. Statute set and its annotated (conveniently missing the civil suits books in annotated); A federal annotated set (conveniently missing section 42 U.S.C §1983); A self-help litigation manual; a book of forms; A federal digest set; and D.O.C rules and policies. It has no material to shepardize cases, no supreme cases, no Supreme Court Reporters, and no state or fed. case law books of published decisions. In addition, ptffs. are allowed to bring only one sheet of paper (and pen) and must spend the whole hour in leg, wrist and restraints, which makes it virtually impossible to do any meaningful research, which necessary requires moving around, bending over, and reaching for books.

19. Defs. allow no photo-copies of their policies or the law books, subra 16; and ptffs. are allowed only one manila envelope and 3 carbon sheets at a time(once a week) for legal purposes. If ptffs. have a full brief of 30 pages to carbon copy and send to the courts and counsels, it can not be done; and when more than one case brief is due the same week, it is utterly impossible to send them if one is indigent and has to get manila envelope and carbon paper by legal loan. This and the above, supra 15-18 unnecessary hinders access to courts and meaningful legal research and preparation.

20. Ptffs. are Muslims and are not allowed their prayer rugs or an extra blanket to pray on as is required in Islam and allowed per D.O.C policy. As a result ptffs. have been forced to neglect prayers by making them informally or uncleanly (i.e., on the same blanket they sleep on) which is forbidden in Islam. As such, defs. have and does unnecessarily hinder ptffs. practice of their faith, as prayer in proper form is mandatory. Nor are ptffs. allowed their kufis (Islamic sacred head covering), as is also permitted per D.O.C policy.

21. Defs have also denied ptffs. hard cover Qur`ans (Islamic religious text) and defs. refuse to distribute Islamic literature 1st ptff. donated to them. The faith requires one to study and follow the Qu`ran, Injil (Gospel of Jesus- peace upon him, Torah, The Sunnah (scribed ways of prophet Muhammad - peace upon him); and literature necessary to live Islam, such as how to pray, permitted and prohibited acts, etc. Ptffs. are allowed hard soap, a hard brush, T.V and hard hygiene containers. Soft-cover Qu`rans and Torahs are not easily found as bibles and ptffs. have found none with commentary (necessary in many cases) explaining the scriptures.

22. Defs. have been and are subjecting ptffs. to a policy of unequal treatment for inmates in the same status. For example, two inmates on administrative segregation, both confined to their cells usually 24 hrs. a day, yet defs. will allow one: no real toothbrush; no hairbrush; not more than ONE call per month; no educational programs or other programs; no T.V/Radio; no magazines or newspapers; no papers with website /internet address on them; no food items from canteen, nor certain hygienic items; only 3 personal (books; only one library book; while the other (also on admin. Seg) and in some cases the same unit) it is allowed all of the above and more. Defs. reason for the disparaging treatment is based on attitude. Simply, if defs. do not like an inmate's attitude (whether disciplinary rules are violated or not) that inmate is DENIED all of the above, though also on admin. Seg. This allows to arbitrarily strip an inmate of all of the above simply because defs. do not like his attitude; i.e., for filing complaints or otherwise lawfully challenging them or their parties.

23. Def. Sharpe retaliatorily and arbitrarily stripped 1st ptff. of books, T.V/ radio, toothbrush, hairbrush, access to programs, etc., supra 22, for asserting his right to some real recreation and refusal to go to the "cellar rec." After he signed up for it, and for his filing complaints of defs.

24. Ptffs. are not allowed their own televising, but a state-issued one which is basically the same(13' color). The institution has 2 radio stations on the T.V channel, 2 educational channels, one catholic mass channel, and one CNN news channel. Defs. control the stations, and by denying ptffs. their own televisions, allow no Islamic channels; no Afrikaans-American music (ptffs. are Afrikaans-American, i.e., R&B, hip hop, urban sound, etc.; no movie channels; no sitcom channels; no local news; and no sports; and only allows such to be heard by a state-issued ear plug rather than ptffs. own earphones in their property. Ptff. must also make themselves liable to any wear and tear on these items(T.V, ear plug) instead of being allowed their own.

25. Ptffs. are also subjected to visits on a distorted video screen, rather than window booths, even though the booths are also no contact (as required),and attorney visits are in booths. The booths are fully partitioned with concrete, steel and plexi-glass from floor to ceiling. Such visits via video lack any form of personalization, the images often distorted and do not match the visitors movements and has to catch up with their facial expression and voice, and this is an unreasonable and unnecessary method for ptffs. to visit their family, particularly children.

**[Note: The following paragraphs No.# 26-43 apply solely to 1st ptff. and W.C.I defs/ HARDING, HAUTAMAKI, McCAUGHTRY, AND MURASKI.]**

26. On 8-17-99, 1st ptff. filed a motion in Racine County Court to correct an erroneous child support charge and to be heard. On 8-19-99, 1st ptff. received a court notice that a hearing would be held on 9-23-99 and that it was 1st ptff's responsibility to appear by phone.

27. 1st ptff. at that time (8-17-99 - 9-23-99), supra 26, was in W.C.I 's segregation unit and not allowed any phone calls, except legal and emergency, which had to be authorized by Def. Harding.

28. On 8-20-99, 1st ptff. stopped def. Harding after hearing her on the unit, showed her the court notice, and asked that the call to the court be arranged. Def. Harding declined to allow the call and told 1st ptff. that the court would have to contact her.

29. On 8-22-99, 1st ptff. wrote the court and explained that def. Harding had to be contacted by the court because he was not at liberty to make the call. On 9-23-99, 1st ptff. was not allowed to call the court, supra 26-28, and as a result his case was dismissed. On 10-15-99 1st ptff. received a letter concerning the case, informing him that it was his responsibility to arrange such calls to the court, that the case was dismissed, and that should 1st ptff. re-file it will be his responsibility to have Def. Harding arrange the call.

30. 1st ptff. wrote def. Harding on 10-25-99, again asking that she arrange a call to the court on this same case matter, supra 26-29, and explained that the court said it was my responsibility to arrange the call; saying the court would contact her. Def. harding refused to arrange the call.

31. In addition to the above, supra 26-30, the court in another matter had called to W.C.I to have 1st ptff. appear by phone on 10-20-99, twice, and both times def. Harding had 1st ptff. brought to the phone late. As a result, this

4

hearing adjourned to some undisclosed date, of which correctional staff conveyed to 1st ptff since he never spoke to the court.

32. On 11-4-99, 1st pfff. wrote def. Harding explaining to her that she was denying him access to the court, had already caused one case to be dismissed, and requested to contact the court by phone. Def. Harding never responded.

33. 1st ptff. did re-file his case, supra 26-29, but have yet to have a hearing scheduled, and has suffered thousands of dollars of erroneous debt, and extreme poverty because of it, causing him to resort to loans, not be to send his children gifts or cards, reduced communication due to postage shortage, and just painful economic oppression, all as a result of his case being dismissed due to def. Harding denial of phone and court access, and her deliberate indifference to such needs.

34. On 9-30-98, 1st ptff. was taken from the general population of W.C.I and place in solitary confinement pending a disciplinary violation charge, and on 10-6-98 was charged with group resistance and petitions, orchestrated by Def. Muraski who refused to provide copies of alleged letters evidence that 1st ptff. allegedly wrote.

35. On 10-20-98, 1st ptff. was heard on the disciplinary charge, supra 34, at a hearing conducted be Def. Hautamaki, at which 1st ptff. argued that he was prevented from a full defense by being denied an opportunity to review the evidence alleged in the report, as photo-copies should be attached with the report. The def. Hautamaki ignored 1st ptff. protests, did not allow any view of the evidence, and instead found 1st ptff. guilty without any view of the alleged evidence and imposed a sentence of 184 days of solitary confinement (segregation) and 30 days loss of recreation, despite 1st ptff. also explaining that he was just out of a cast due to leg surgery, and needed to attend physical therapeutic recreation.

36. 1st ptff. appealed to Def. McCaughtry, explaining all of the above to no avail. Def. McCaughtry upheld the full sentence, supra 35, and finding of guilt. Of which 1st ptff. served every 184 days and 30 days loss of rec., while mostly all others (inmates in general) did only ½ the disciplinary sentence for any sentence less than 360 days and was not a battery charge.

37. 1st ptff. eventually had the finding of guilt and sentence reverse, supra 34-36, by a common writ of certiorari in Dodge County, on April 5, 2000.

38. However, as a result of this, supra 34-36, under the circumstances, 1st ptff. suffered significant and atypical hardship as a result of def. arbitrary and deliberate indifferent actions to 1st ptff's rights and his needs. This is so in the following ways: A.) 1st ptff., prior to 34-36 supra, was in general population and going to therapeutic recreation 6 days a week for recovery from leg surgery, and suffered a dramatically prolonged recovery, muscle atrophy in his leg, and deprivation of ever a full recovery because of not being able to attend prescribed therapy because of seg. placement; B.) 1st ptff. mandatory release date was extended by 92 days; C.) 1st ptff. was not allowed hygienic items such as deodorant, shaving cream, hair products, lotions, face or skin cream, his own toothpaste or toothbrush, and had to be prescribed absorbase for a skin condition due to cracked skin, which form cuts; D.) 1st ptff. was not allowed any of his own clothes or winter under-clothes and it got so cold that it was impossible to on the concrete desk in the cell because it felt like a slab of ice due to it being a WI winter and the cells having no insulation from the outside, just concrete and steel in below zero temperatures, and ptff. wear consisted of thin cloth, short sleeves T-shirts and kaki shirt and pants, and thin cloth slippers; E.) 1st ptff's light in his cell was kept on 24 hrs a day; F.) 1st ptff's psychological treatment was hindered, of which while in population he was receiving and progressing, but began to retrogress due to supra 34-36; G.) 1st ptff's contact with his children also declined due to only 3 visitors at a time being allowed, and those being no-contact, with ptff. in a partitioned booth and cuffed to a wall; H.) 1st ptff was denied his leg brace that he wore to seg. but was not allowed; I.) 1st ptff. was not allowed phone calls, nor photos of his family or anyone, no newspapers, no religious literature or apparel other than Holy Book, no personal books, no programs (educ., Hobby, etc.), no canteen other writing supplies, no access to institutions jobs, no T.V, no radio, no typewriter, or any electronics, no window in the cell, no time outside at all, no personal writing (1st ptff. is a writer), isolated from the general population and events of the world.

5

39. 1st ptff. also suffered another 7 months in administrative segregation as a result of 34-37 subra; and 1st ptff. incurred over $160.00 dollars in direct cost for bringing forth the certiorari action that reversed the finding of guilt and sentence and also expunged the same from 1st ptff. record. *Ptff. was taken off of Admin. Seg. Feb. 8, 2000.*

### 1st Cause of Action

40. Defendants are liable for violating ptff's 8th and 14th amendment right of the United States Constitution, by subjecting them to conditions of cruel and unusual punishment, and/or deliberate indifference, and/or directing, promulgating, or failing to prevent, such violations of ptff.'s right, which were and are clearly established by law. (see comp. at _1-25_, inter alia). *(34-39, in re: 1st ptff.)*

### 2nd Cause of Action

41. Defendants are liable for violating ptff.s' 4th and 14th amendment right of the United States Constitution, by subjecting them to unreasonable, humiliating, and dehumanizing searches, seizures, and invasion of privacy, and/or directing, promulgating, or failing to prevent, such violations of ptffs. rights which were and are clearly established by law. (see comp. at _12-14_ inter alia.).

### 3rd Cause of Action

42. Defendants are liable for violating ptffs'. 1st and 14th amendment right of the United States Constitution, by subjecting them to denials of their rights to free speech, religion, press/publications, mails, and meaningful legal and court access, by directing, promulgating, or failing to prevent, such violations of ptffs rights which were and are clearly established by law. (see comp. at _15-21_ inter alia). *(26-33, in re: 1st ptff.)*

### 4th Cause of Action

43. Defendants are liable for violating ptffs' 14th amendment right of the United States Constitution by subjecting them to drastically unequal treatment, though similarly situated as others; and by doing so, inter alia, without any form of due process; by directing, promulgating, or failing to prevent, such violations of ptffs. rights, which were and are clearly established by law. (see comp. at _22-25_, inter alia).

### "Trail by Jury"
Plaintiff demands a trail by Jury, should they not win by pretrial judgement.

### "Relief Requested"
Plaintiffs seek injunctive relief: prohibiting defs. from forcing them to live in 24 hr. illumination and to constantly awaken; prohibiting defs. From conducting routine strip searches as part of cell searches and prohibiting 24 hr. camera surveillance, except for cause shown; enjoining defs to permit ptff. to have real toothbrushes and not some finger contraption; enjoining defs. to provide some physical recreational mechanisms other than and empty chamber of steel and bricks; enjoining defs. to allow magazines, newspapers, at least 25 stamps or stamped envelopes weekly, and printouts whether from a computer or not as long as sent by mail; enjoining defs. To at least allow booth visits as opposed to video visits; enjoining defs. to allow prayer rugs or an extra blanket for ptffs to pray, and allow hardcover religious texts only; enjoining defs. to allow Federal and State law case books. The civil claims sections of the annotated sets already provided, Sherpards Citebooks, and Supreme Court Reporters, and to provide such; enjoining Defs. to allow all legal mail to be mailed via disbursement, whether indigent or not, and to allow at least 5 legal envelopes a week, 10 regular envelopes a week, and 20 carbon sheets of paper; and all the rights and privileges allotted to those or allowed to those on administrative confinement, and at least 15 minutes on each phone call, *and at least one call a week.*

2. (A) Ptffs. seeks compensatory damages *of $25,000* ~~in the amount~~ from each defendant in their individual official capacity for each cause of action and/or constitutional violation they're found in violation of, *in individual and official capacity.*

3. (A) Ptffs. seek punitive damages in the amount of *$35,000* from each defendant in their individual capacity, and *$35,000* in their official capacity for each cause of action and/or constitutional they're found guilty of.

4. (A) 1st Ptffs. seeks compensatory damages from defs. McCaughtry, Hautamaki, and Muraski, in the amount of $500.00 for each day he suffered in segregation (which was later reversed) and $500.00 in punitive damages for each day of the same, and additional $160.00 he incurred in court costs; notwithstanding the above sought.

6

4. (B) 1st ptff. also seeks compensatory damages from Def. Harding equal to the amount he's incurred in interest on an erroneous debt which she prevented from being cleared (to be determined), and $10,000.00 for the poverty it caused and suffering; notwithstanding the above sought, and $20,000.00 in punitive damages.

5. (A) Ptffs also seek declaratory judgement finding that Defs. did in fact violate each cause of action and/or constitutional right alleged to have been violated.

6.(A) Ptffs. also seek any and all other relief the court deems necessary, or allowed, including but not limited to the costs of pursuing this action and attorney fees should one appear later.

## "Verification"

Plaintiff, _Dennis E. Jones 'EL and Micha`el Johnson_, under penalty of perjury pursuant to 28 U.S.C 1746 I do attest that all of the above 43 averments are true and correct.

Dated this ___7th___ of ___June, 2000.___

Respectfully Submitted,

2nd Ptff. _Michael Johnson_
       Michael Johnson

1st Ptff. _Dennis E. Jones 'EL_
       Dennis E. Jones 'EL

7

## SUPERMAX CORRECTIONAL INSTITUTION

### Inter-Office Memorandum

DOCKET NUMBER
U.S DISTRICT COURT
WEST___ __ __ __ISCONSIN

JUN ? 8 2000

JOSEPH W. SKUPNIEWITZ, CLERK

CASE NUMBER

00C 0421 C

**DATE**: May 26, 2000

**TO**: Michael Johnson #265812
Unit Echo

**FROM**: Gerald Berge
Warden

**SUBJECT**: Letter of 5/4/00

After a review of SMCI-2000-11514 I find the decision of ICE appropriate and within administrative authority.

The complaint was rejected as frivolous pursuant to DOC 310.11(4)(c), Wis Adm Code, because this "Complaint does not allege sufficient facts upon redress may be made"

The SMCI outdoor recreation facilities are designed and built within state and federal statute mandates. SMCI outdoor recreation facilities are adequate and built and operated within State of Wisconsin administrative authority. Thus this issue does not allege sufficient facts upon redress may be made."

The ICE rejection was appropriate and within administrative authority.

cc:    Mr. Ellestad
       Mr. Haines
       file

nms

Tommy G. Thompson
Governor

Jon E. Litscher
Secretary

CCE REPORT
SMCI-2000-1594

# State of Wisconsin
## Department of Corrections

CORRECTIONS COMPLAINT EXAMINER'S REPORT

DOCKET NUMBER

U S DISTRICT COURT
WE~~ ~~ ~~ WISCONSIN
JUN 28 2000

JOSEPH W SKUPNIEWITZ, CLERK

CASE NUMBER

**To:** JOHNSON, MICHAEL S   # 265812
UNIT: Alpha - 206
Supermax Correction Institution
1101 Morrison Dr.
BOSCOBEL WI 53805-0265

**From:**
Corrections Complaint Examiner
Office of Audits, Investigations and Evaluations
P.O. Box 7925
Madison, WI. 53707-7925

**RE:** Complaint File #:   SMCI-2000-1594

**Name:**   JOHNSON, MICHAEL S    # 265812

**Complaint Number:**   SMCI-2000-1594

**Nature of Complaint:**   ME - Inmate is complaining about the lighting in his cell.

**Method of Disposition:**
Y   Review on Record
Y   Investigation

**Recommendation:**

In agreement with and for the reasons outlined in the ICE's report, it is recommended this complaint be dismissed. I have reviewed the administrative rule referred to by the complainant (DOC 303.70(1), Wis. Adm. Code) and I find it states: "sufficient light to read by at least twelve hours per day." Clearly the lights in question meet that mandate. In addition, the night lights at issue here are "security/night lights" independent of the overhead lighting that is on during the day. The security lights are 7 watt fluorescent bulbs that are the equivalent of a standard night light found in the home. That is minimal by any standard and I would propose much less intrusive or bothersome than a flashlight shining through a window, as complainant apparently would prefer.

Date:  Thursday, March 02, 2000

*John Ray*

CORRECTIONS COMPLAINT EXAMINER

Tommy G. Thompson
Governor

Jon E. Litscher
Secretary



OOS REPORT
SMCI-2000-1594

# State of Wisconsin

## Department of Corrections

### OFFICE OF THE SECRETARY'S REPORT

**To:**
JOHNSON, MICHAEL S   # 265812
UNIT: Alpha - 206
Supermax Correction Institution
1101 Morrison Dr.
BOSCOBEL WI 53805-0265

Complaint File #:   SMCI-2000-1594

The following is the Secretary's decision on the Corrections Complaint Examiner's recommendation of 3/2/00 in the above case:
The attached Corrections Complaint Examiner's recommendation to dismiss this complaint is accepted as the decision of the Secretary.

Date:  Sunday, March 19, 2000         Reviewer's Signature:

Tommy G. Thompson
Governor

Jon E. Litscher
Secretary



**CCE REPORT**
SMCI-2000-10919

# State of Wisconsin
## Department of Corrections
### CORRECTIONS COMPLAINT EXAMINER'S REPORT

**To:** JOHNSON, MICHAEL S   # 265812
UNIT: Alpha - 209
SUPERMAX CORRECTION INSTITUTION
1101 Morrison Dr.
BOSCOBEL WI 53805-0265

U.S DISTRICT COURT
WEST DIST OF WISCONSIN

JUN 1 2 2000

JOSEPH W. SKUPNIEWITZ, CLERK
CASE NUMBER

**From:**

Corrections Complaint Examiner
Office of Audits, Investigations and Evaluations
P.O. Box 7925
Madison, WI. 53707-7925

**RE:**  Complaint File #:    SMCI-2000-10919

**Name:**                JOHNSON, MICHAEL S   # 265812
**Complaint Number:**    SMCI-2000-10919
**Nature of Complaint:** KC Inmate alleging denial of treatment for his eyes.
**Method of Disposition:**
   Y  Review on Record
   N  Investigation
**Recommendation:**

In agreement with the ICE, and as I note this issue was reviewed and decided by the BHS director, it is recommended this complaint be dismissed.

Date: Thursday, May 18, 2000

*John Ray*
CORRECTIONS COMPLAINT EXAMINER

Tommy G. Thompson
Governor



OOS REPORT
SMCI-2000-10919

Jon E. Litscher
Secretary

# State of Wisconsin

## Department of Corrections

### OFFICE OF THE SECRETARY'S REPORT
NUMBER

**To:**
JOHNSON, MICHAEL S   # 265812
UNIT: Echo - 210
SUPERMAX CORRECTION INSTITUTION
1101 Morrison Dr.
BOSCOBEL WI  53805-0265

U.S. DISTRICT COURT
WES___  ___  __ WISCONSIN

JUN 28 2000

JOSEPH W. SKUPNIEWITZ, CLERK

CASE
NUMBER

Complaint File #:   SMCI-2000-10919

The following is the Secretary's decision on the Corrections Complaint Examiner's recommendation of 5/18/00 in the above case:
The attached Corrections Complaint Examiner's recommendation to dismiss this complaint is accepted as the decision of the Secretary.

Date:  Sunday, May 21, 2000          Reviewer's Signature:

Tommy G. Thompson
Governor

Jon E. Litscher
Secretary



CCE REPORT

DOCKET NUMBER: SMCI-2000-2921

U.S. DISTRICT COURT
WE... ...NSIN
JUN 8 2000
JOSEPH W. SKUPNIEWITZ, CLERK
CASE NUMBER

# State of Wisconsin
## Department of Corrections

### CORRECTIONS COMPLAINT EXAMINER'S REPORT

**To:** JOHNSON, MICHAEL S  # 265812
UNIT: Alpha - 206
Supermax Correction Institution
1101 Morrison Dr.
BOSCOBEL WI  53805-0265

**From:**
Corrections Complaint Examiner
Office of Audits, Investigations and Evaluations
P.O. Box 7925
Madison, WI. 53707-7925

| | |
|---|---|
| **RE:** Complaint File #: | SMCI-2000-2921 |
| **Name:** | JOHNSON, MICHAEL S  # 265812 |
| **Complaint Number:** | SMCI-2000-2921 |
| **Nature of Complaint:** | ME - Inmate is complaining about the ventilation system at SMCI, claiming that it is ineffective and doesn't work. |
| **Method of Disposition:** | Y  Review on Record |
| **Recommendation:** | N  Investigation |

In agreement with and based on the report of the Institution Complaint Examiner, it is recommended this complaint be dismissed

Date: Tuesday, March 14, 2000

*[signed] John Ray*
CORRECTIONS COMPLAINT EXAMINER